SENAUIT v BARR

BANKS AND BANKING—JOINT DEPOSITS—PRESUMPTIONS—UNDUE IN-
FLUENCE—STATUTES.
  The statutory presumption that title to a joint bank account is
  intended to vest in the survivor may be overcome by a jury's
  finding that undue influence was exerted upon the depositor
  (MCLA 487.703).

Appeal from Wayne, Nathan J. Kaufman, J.
Submitted Division 1 April 4, 1974, at Detroit.
(Docket No. 17008.) Decided May 30, 1974.

Complaint by George F. Senauit, administrator
with will annexed of the estate of Constantine
Senavaitis, against Ruth L. Barr and John B. Barr
to set aside certain transfers and to recover bank
deposits and securities. Judgment for plaintiff.
Defendants appeal. Affirmed.

*Komjathy & Komjathy,* for plaintiff.

*Raymond A. Koltys,* for defendant.

Before: BASHARA, P. J., and BRONSON and CAR-
LAND,* JJ.

BASHARA, J. Plaintiff brought suit as administra-
tor of the estate of Constantine Senavaitis to set
aside certain transfers and recover bank deposits

REFERENCES FOR POINTS IN HEADNOTE
10 Am Jur 2d, Banks § 377.
Gift or trust by deposit of funds belonging to the depositor in a
  bank account in the name of himself and another, 48 ALR 189.
* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

and securities amounting to a sum in excess of $62,000. At issue was whether defendants received money as gifts from decedent or as a result of undue influence and fraud.

A jury trial ensued which lasted for nine days, and resulted in a verdict for plaintiff in the sum of $62,812.73. Defendants appeal from the trial court's refusal to grant them a new trial.

The events leading to the present controversy began on June 18, 1969 when decedent's wife, Ursula, became seriously ill. She was hospitalized, and so remained, until her death on July 1, 1969. Although the parties dispute decedent's own health during these times, the record discloses that he was 79 years old and had many physical disabilities including failing eyesight.

On June 26, 1969, decedent's estate consisted primarily of five bank accounts, a land contract receivable, U.S. "E" Savings Bonds, and Ford Motor Company stock. All of the assets were held in the joint names of decedent and his wife. The testimony at trial revealed that by July 7, 1969 nearly all of the assets were either converted or transferred into new accounts held by defendant Ruth Barr and decedent as joint tenants with rights of survivorship. One bank account containing $16,000 was transferred on the day of Mrs. Senavaitis' death when decedent was said to be grieving. On July 8, 1969, a day after decedent's death, defendant Barr attempted to deliver, without informing the bank that decedent was dead, a new signature card to the bank and transfer the last remaining account into her name and decedent's. Mrs. Barr testified that all of the bank accounts and stock were intended for her as gifts upon decedent's death.

While decedent died childless, he left heirs at

law, two of whom, testimony indicated, he kept close relations with during his last years. Mrs. Barr was the niece of decedent's wife. With this factual background in mind, we proceed to the legal questions presented.

Defendants first assert error by the trial court in refusing to give their requested instruction to the jury on the statutory presumption contained in MCLA 487.703; MSA 23.303. The statute states in pertinent part as follows:

"When a deposit shall be made, in any bank by any person in the name of such depositor or any other person, and in form to be paid to either or the survivor of them, such deposits * * * may be paid to either during the lifetime of both, or to the survivor after the death of 1 of them * * * .

"The making of the deposit in such form shall, in the absence of fraud of undue influence, be prima facie evidence, in any action or proceeding, to which either such banking institution or surviving depositor or depositors is a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors."

It is defendants' contention that the court should have instructed the jury that the statutory presumption could be rebutted by contrary evidence, but it would remain in the trial as an inference for the jury's consideration. However, they maintain, he charged that should the jury find defendants exerted undue influence on decedent the statute would be inapplicable. The court charged in part as follows:

"We do have a statute in Michigan, 23.303 of Michigan Statutes Annotated, which is a rather lengthy statute, and I will not read it to you in its entirety, but it boils down to that where there's a bank account in joint names with the right of survivorship, it is pre-

sumed that that's what the party wanted it for, unless there was undue influence.

"I'm telling you this because the law says so. But if you find there was undue influence, it automatically does away with Statute 23.303."

Defendants cite the decisions of *In re Wood Estate,* 374 Mich 278; 132 NW2d 35 (1965), and *Kirilloff v Glinisty,* 375 Mich 586; 134 NW2d 707 (1965), for support of their argument that an inference would still exist after a presumption was rebutted. The facts and principles of those cases distinguish them from the instant suit. In those cases cited or in any we are aware of concerning the presumption, there was no evidence of undue influence introduced to overcome the explicit language in the foregoing statute. Furthermore, the question was never raised. The language of the statute, however, expressly states that: "[t]he making of the deposit in such form shall, *in the absence of fraud or undue influence,* be prima facie evidence". (Emphasis ours.)

We interpret this language to mean that once the jury finds undue influence exists, they may be instructed to disregard the presumption. No inference remains for the jury's consideration for not only is the presumed fact rebutted, but the proven fact has been shown to be the product of wrongdoing. We find no reversible error in the trial court's instruction.

Defendants next assign error to the trial court's instruction concerning fiduciary relationship. They argue that the jury was not adequately informed as to what does or does not constitute a fiduciary relationship. We disagree. Our review of the instructions convinces us that the trial court explained the law, giving its instructions fully, fairly, and carefully on all of the material issues involved.

A review of the record and briefs disclose that defendant's remaining allegations of error are without merit.

Affirmed.

All concurred.